IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE ESTATE OF CALDWELL
JONES, JR., et al.,

    Plaintiffs,

      v.

LIVE WELL FINANCIAL, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:17-CV-3105-TWT

**OPINION AND ORDER**

This is an action seeking temporary and permanent injunctive relief to prevent

the foreclosure sale of the Plaintiffs' home by the Defendant. It is before the Court on

the Plaintiffs' Petition for Temporary Restraining Order and Preliminary Injunction

[Doc. 1-5], and the Defendant's Motion to Dismiss [Doc. 2]. For the reasons stated

below, the Defendant's Motion to Dismiss [Doc. 2] is GRANTED and the Plaintiffs'

Petition for Temporary Restraining Order and Preliminary Injunction [Doc. 1-5] is

DENIED as moot.

## I. Background

The Plaintiffs in this case are the Estate of Caldwell Jones, Jr., Vanessa Jones

in her individual capacity as the surviving spouse of Caldwell Jones, Jr., Vanessa

Jones in her representative capacities as the Executrix of the Estate and guardian of

her minor-child Leah Grace Jones, and Leah Grace Jones.

On July 28, 2014, Caldwell Jones, Jr. executed a Reverse Mortgage Deed (the

"Reverse Mortgage") for his home located at 625 Edgecombe Drive, Stockbridge,

Georgia 30281 ("the Property"), which he shared with his wife, Vanessa Jones, and

minor child, Leah Grace Jones.[1] Mr. Jones executed the Reverse Mortgage with

American Nationwide Mortgage Company, Inc., which later assigned it to the

Defendant.[2] Vanessa Jones was not a "borrower" on the Reverse Mortgage.[3]

A Home Equity Conversion Mortgage, commonly referred to as a "reverse

mortgage," allows older homeowners to convert their accumulated home equity into

liquid assets.[4] In a reverse mortgage, the borrower receives either a lump sum,

---

[1]     Compl. ¶¶ 7-8 [Doc. 1-5].

[2]     Br. in Supp. of Def.'s Mot. to Dismiss, at 7.

[3]     Id. ¶¶ 33-34; Jones Aff. ¶ 8 [Doc. 1-1]. In fact, Ms. Jones had previously conveyed the entirety of her interest in the Property to Mr. Jones by Warranty Deed. See Br. in Supp. of Def.'s Mot. to Dismiss, at 16-17.

[4]     12 U.S.C. § 1715z–20(a).

periodic payments, or a line of credit from a lender based on this accumulated equity.[5]

It is the reverse of a traditional mortgage because the borrower receives these

payments, and need not repay the loan until certain triggering events occur, such as

the death of the borrower or the sale of the home.[6]

Reverse mortgages are typically non-recourse loans, meaning that if the

borrower defaults on the loan, and the sale of the home is insufficient to cover the

balance of the loan, the lender cannot go after any of the borrower's other assets.[7]

Congress, worried that this risk would deter lenders from entering the reverse

mortgage market, created a mortgage-insurance program, administered by the

Department of Housing and Urban Development ("HUD"), as an incentive for lenders

to provide reverse mortgages.[8] This insurance program protects lenders from financial

loss if certain conditions are met.[9]

---

[5]     See Harris v. Castro, No. 1:14-cv-3110-TCB, 2015 WL 13547618, at *1 (N.D. Ga. Nov. 19, 2015).

[6]     See, e.g., Bennett v. Donovan, 703 F.3d 582, 584-85 (D.C. Cir. 2013); Harris, 2015 WL 13547618, at *1.

[7]     Bennett, 703 F.3d at 585.

[8]     Id.; Federal Nat'l Mortg. Ass'n v. Takas, No. 2:17-CV-204-DAK, 2017 WL 3016785, at *3 (D. Utah July 14, 2017).

[9]     Bennett, 703 F.3d at 585.

On September 21, 2014, Mr. Jones passed away.[10] The terms of the Reverse Mortgage stated that the lender could "require immediate payment-in-full of all sums secured by this Security instrument" if, among other things, "[a] Borrower dies and the Property is not the principal residence of at least once surviving Borrower . . . ."[11] After Mr. Jones's death, the Defendant declared the loan to be in default, and ran a Legal Notice of Default and Notice of Sale Under Power.[12] Vanessa Jones and Leah Grace Jones still reside at the Property.[13]

On June 23, 2017, the Plaintiffs filed this action in state court, seeking emergency temporary and permanent injunctive relief to prevent the Defendant from foreclosing. On July 3, 2017, the Superior Court of Henry County granted the Plaintiff's request for a temporary restraining order and enjoined the Defendant from proceeding with the foreclosure sale.[14] On August 16, 2017, the Defendant removed the case to this Court, and now moves to dismiss.[15]

---

[10]      Compl. ¶ 12.

[11]      Br. in Supp. of Def.'s Mot. to Dismiss, at 4-5.

[12]      Compl. ¶ 13.

[13]      Id. ¶ 1.

[14]      See [Doc. 1-7].

[15]      Notice of Removal [Doc. 1]; Def.'s Mot. to Dismiss [Doc. 2].

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[16] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[17] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[18] Generally, notice pleading is all that is required for a valid complaint.[19] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.

---

[16]      Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[17]      Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[18]      See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[19]      See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

## III. Discussion

### A. Violation of 12 U.S.C. § 1715z–20(j)

The Plaintiffs' primary argument[20] is that the Defendant violated 12 U.S.C. § 1715z–20(j) by declaring the loan balance due and beginning foreclosure on the Property while Ms. Jones, the non-borrowing surviving spouse, still resided in it.[21] The Plaintiffs argue that, under § 1715z–20(j), a reverse mortgage cannot become due and payable while a surviving spouse still resides in the property.[22]

The Defendant responds that § 1715z–20(j) only governs HUD's authority to insure the loan, and does not implicate the Defendant's independent contractual right

---

[20]   The Plaintiffs also assert that the Defendant's actions are "arbitrary and capricious and contrary to law and exceed their statutory authority and in violation [sic] of Georgia Department of Banking and Finance." Compl. ¶ 38. They further assert that the Defendant "deprive[d] Plaintiffs of their due process rights by failing to give Plaintiffs an opportunity to submit evidence in support of their claim for relief," "[d]eprived[d] Plaintiffs of statutory protections," and "[i]ncorrectly conclude[d] that relief, [sic] would not benefit Plaintiffs because of alleged Federal Tax Lien." Compl. ¶ 39. However, the Plaintiffs fail to state any specific cause of action and fail to cite authority for these propositions. The Plaintiffs also fail to further address these arguments in their Response in Opposition to Defendant's Motion to Dismiss [Doc. 6]. Therefore, the Court deems these claims to be abandoned.

[21]   See Compl. ¶¶ 27, 31, 35-37, 39.

[22]   Id. ¶ 27.

to foreclose under the terms of the loan agreement.[23] The Court agrees. 12 U.S.C. § 1715z–20(j) provides that:

> The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. *For purposes of this subsection, the term "homeowner" includes the spouse of a homeowner.*[24]

Section 1715z–20(j) prohibits HUD from insuring a reverse mortgage that fails to protect a non-borrowing spouse who still resides in the home.[25] It does not, however, speak to the independent contractual relationship between the lender and borrower. Instead, it only concerns the insurability of the loan by HUD.[26] The statute

---

[23]     Br. in Supp. of Def.'s Mot. to Dismiss, at 12-14.

[24]     12 U.S.C. § 1715z–20(j) (emphasis added).

[25]     See Jeansonne v. Generation Mortg. Co., 644 F. App'x 355, 357 (5th Cir. 2016).

[26]     See Federal Nat'l Mortg. Ass'n v. Takas, No. 2:17-CV-204-DAK, 2017 WL 3016785, at *5 (D. Utah July 14, 2017) ("[T]he statute is inapplicable and irrelevant because the statute only regulates whether HUD may or may not insure a reverse mortgage but does not alter or speak to the enforceability of existing HECM loans and their terms."); Aldi v. Wells Fargo Bank, NA, No. 3:14-cv-00089-WWE, 2015 WL 3650297, at *7 (D. Conn. Feb. 17, 2015) ("12 U.S.C. § 1715z–20 governs HUD's insurance of reverse mortgages, not the independent contractual relationship between mortgagors and mortgagees. Indeed, Section 1715z–20(j) explicitly prevents HUD from insuring reverse mortgages such as the one at issue in this case. That HUD erred by doing so does not create a cause of action running from plaintiffs to defendants.").

"[b]y its terms . . . does not apply to lenders and does not affect the validity or enforceability of the terms of contracts between lenders and borrowers."[27] It does not govern the rights of parties under a valid mortgage contract, or provide HUD with the power to alter the terms of an existing private agreement.[28] It only regulates HUD's administration of the insurance program. Furthermore, the statute provides no private cause of action for a borrower against a lender.[29]

Here, the Defendant had the right under the terms of the Reverse Mortgage to require immediate payment of the loan balance if a "Borrower" dies and "the Property is not the principal residence of at least one surviving Borrower."[30] Once Mr. Jones,

---

[27]     Federal Nat'l Morg. Ass'n, 2017 WL 3016785, at *5.

[28]     See Bennett v. Donovan,703 F.3d 582, 588 (D.C. Cir. 2013) ("Here, that action is the foreclosure according to the terms of a lawfully executed mortgage contract, and in that respect, the lenders *are* independent of HUD's control."); Federal Nat'l Mortg. Ass'n, 2017 WL 3016785, at *5 ("Section 1715z-20(j) does not alter or speak to the enforceability or the validity of the 2007 Reverse Mortgage or its contractual terms. The statute only addresses HUD's authority to insure the 2007 Reverse Mortgage and does not provide for a private cause of action."); Jeansonne, 644 F. App'x at 357 ("And while HUD may have violated § 1715z–20(j) by insuring a reverse mortgage that failed to protect Evelyn Jeansonne as the non-borrowing spouse, this would not affect Generation's right to foreclose under the terms of the contract it executed with Avrel Jeansonne.").

[29]     See Federal Nat'l Mortg. Ass'n, 2017 WL 3016785, at *5 ("Even if the terms of the statute did apply directly to lenders, the court also notes that the statute does not provide for a private cause of action.").

[30]     Br. in Supp. of Def.'s Mot. to Dismiss, at 4-5.

the sole borrower, passed away, the Defendant had the contractual right to declare the entire loan balance due. Whether the Reverse Mortgage complied with the requirements of HUD's insurance program is a separate question. Even if the Reverse Mortgage is uninsurable under § 1715z–20(j), the Defendant still has the right to enforce the terms of the agreement. Holding otherwise would interfere with the parties' freedom of contract. Therefore, this claim is dismissed.

## B. Bennett v. Donovan

Furthermore, the Plaintiff contends that the Defendant's actions "[v]iolate[] Bennett v. Donovan . . . ."[31] However, the decision in Bennett v. Donovan[32] is inapplicable here because it only addresses HUD's mortgage-insurance program, and not the independent contractual rights of a lender to foreclose under the terms of a loan agreement.

In Bennett, the surviving spouses of deceased reverse mortgage holders sued HUD, arguing that the agency's regulations implementing 12 U.S.C. § 1715z–20(j) violated the Administrative Procedure Act.[33] Specifically, they argued that a HUD regulation, which authorized HUD to insure reverse mortgages that became due and

---

[31] Compl. ¶ 39.

[32] 4 F. Supp. 3d 5 (D.D.C. 2013).

[33] Id. at 7.

payable if a *mortgagor* died, was inconsistent with § 1715z–20(j), which only

permitted HUD to insure reverse mortgages that became due and payable after the

death of *both* the mortgagor and the spouse of the mortgagor.[34] The court agreed,

holding that the HUD regulation was invalid as applied to the plaintiffs of that case.[35]

As explained above, whether the reverse mortgage here is insurable by HUD

is not at issue. Instead, the enforceability of the terms of the Reverse Mortgage are at

issue. <u>Bennett v. Donovan</u> simply addressed the validity of a HUD regulation

implementing the mortgage-insurance program. Therefore, it is not relevant.

**C. Mortgagee Letter 2014-07**

Finally, the Plaintiffs cite HUD's Mortgagee Letter 2014-07.[36] The Plaintiffs

argue that:

> Upon finding that the HUD regulation violated the HECM statute, HUD
> issued a mortgagee letter revising the terms of revising the terms of
> reverse mortgages post August 4, 2014. In the interest of public policy
> and justice, the effect of the mortgagee letter required HUD to
> implement "Hold Election" for non-surviving spouses. The "Hold
> Election" allows the loan servicer the option to continue servicing the
> loan while the surviving spouse remains living in the home.[37]

---

[34]    <u>Id.</u> at 8.

[35]    <u>See</u> <u>id.</u> at 9-15.

[36]    Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 7-8.

[37]    <u>Id.</u>

After <u>Bennett v. Donovan</u>, in which the court concluded that HUD's regulation implementing § 1715z–20(j) was invalid, HUD issued Mortgagee Letter 2014-07.[38] Mortgagee Letter 2014-07 stated that HUD would not insure reverse mortgage loans originated after August 4, 2014 that failed to protect non-borrowing surviving spouses.[39]

However, this does not help the Plaintiffs. Mortgagee Letter 2014-07 does not speak to the enforceability of a contract between a lender and a borrower, but instead addresses the insurability of the loan by HUD. Even if HUD will no longer insure contracts that fail to protect a surviving non-borrowing spouse after the issuance of Mortgagee Letter 2014-07, a lender can still opt to foreclose on a non-borrowing spouse under the terms of an independently enforceable private contract.[40] The

---

[38]     See <u>Bombet v. Donovan</u>, No. 13-118-SDD-SCR, 2015 WL 1276569, at *3 (M.D. La. Mar. 19, 2015).

[39]     See <u>id.</u>

[40]     See <u>Plunkett v. Castro</u>, 67 F. Supp. 3d 1, 18 (D.D.C. 2014) ("However, once those loans were consummated, an independent contractual relationship was created between the borrowing spouses and the third-party mortgagees. HUD's sole role after the creation of this contract was to insure these loans."); <u>see also</u> <u>Bombet</u>, 2015 WL 1276569, at *3 ("However, the same court also made clear in the related case of <u>Plunkett</u> that, pursuant to the private contract between the mortgagee and mortgagor, the mortgagee may still choose to foreclose on the non-borrower surviving spouse, despite the fact that as a result of Mortgagee Letter 2014–07, HUD will no longer insure contracts that fail to protect a surviving spouse.").

Mortgagee Letter itself even states that HUD will not be able to change the terms of existing contracts.[41]

Furthermore, in 2015, HUD issued Mortgagee Letter 2015-03 and Mortgagee Letter 2015-15. These letters focused on reverse mortgages originated prior to August 4, 2014. In Mortgagee Letter 2015-03, HUD made the Mortgagee Option Election ("MOE") assignment program available to lenders of reverse mortgages originated before August 4, 2014.[42] This provided lenders with the option of assigning a reverse mortgage to HUD, instead of foreclosing on the property, under certain conditions.[43] HUD later rescinded Mortgagee Letter 2015-03 and issued Mortgagee Letter 2015-15, which revised the program by, among other things, omitting a requirement that a surviving spouse pay a lump sum of the loan balance to be eligible.[44]

---

[41]     See U.S. DEP'T OF HOUS. & URBAN DEV., MORTGAGEE LETTER 2014-07, at 3 (Apr. 25, 2014) ("Because FHA's traditional interpretation is embedded in existing, legally binding contracts, FHA has no authority to alter it with respect to existing loans.").

[42]     Harris v. Castro, No. 1:14-cv-3110-TCB, 2015 WL 13547618, at *5 (N.D. Ga. Nov. 19, 2015).

[43]     See Brown v. CIT Bank NA, No. CV-17-01367-PHX-DGC, 2017 WL 1862143, at *1 (D. Ariz. May 9, 2017).

[44]     Harris, 2015 WL 13547618, at *5. However, Mortgagee Letter 2015-10 provides that a lender should still follow the requirements of the rescinded Mortgagee Letter 2015-03 when faced with a surviving non-borrowing spouse and a loan originated before August 4, 2014. See U.S. DEP'T OF HOUS. & URBAN DEV., MORTGAGEE LETTER 2015-10, at 4 (Apr. 23, 2015).

However, this also does not provide the Plaintiffs with a source of relief. The MOE program provides a lender with two "available paths" when there is a surviving non-borrowing spouse: it can either foreclose under the terms of the contract, or utilize the MOE assignment program by assigning the mortgage to HUD.[45] HUD, in "recognizing the legally binding nature of existing private mortgage contracts," emphasized that "the mortgagee's contractual rights under the HECM remain undisturbed" and that it is "entirely within the mortgagee's discretion to determine the path to claim payment."[46] HUD has the power to accept an assignment of a reverse mortgage and defer foreclosure under this program, but it "cannot require a lender to assign an HECM to HUD."[47] It is not a party to these existing contracts, and does not have the power to "alter the terms of an existing contract between a borrower and a lender."[48] Thus, the Defendant still possesses the right to foreclose under the terms of the Reverse Mortgage, despite the availability of these other options.

---

[45]    U.S. DEP'T OF HOUS. & URBAN DEV., MORTGAGEE LETTER 2015-03, at 4 (Jan. 29, 2015).

[46]    Id. at 3.

[47]    Federal Nat'l Mortg. Ass'n v. Takas, No. 2:17-CV-204-DAK, 2017 WL 3016785, at *3 (D. Utah July 14, 2017).

[48]    Id.

Therefore, the Defendant's Motion to Dismiss is granted because the Plaintiffs have failed to state a plausible claim for relief. 12 U.S.C. § 1715z–20(j) is inapplicable here, and HUD has no authority to alter the terms of an existing, binding contract. The Plaintiffs' Petition for Temporary Restraining Order and Preliminary Injunction is consequently denied as moot.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion to Dismiss [Doc. 2] is GRANTED. The Plaintiffs' Petition for Temporary Restraining Order and Preliminary Injunction [Doc. 1-5] is DENIED as moot.

SO ORDERED, this 19 day of September, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge